# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NICK NATOUR and ENCLARE, LLC, | § | |
| | § | |
| | § | Civil Action No. 4:21-CV-00331 |
| v. | § | Judge Mazzant |
| | § | |
| BANK OF AMERICA, N.A., *et al.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Paide and Scott Bickell's Motion for Summary Judgment (Dkt. #134).  Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED**.

## BACKGROUND

Plaintiff Nick Natour ("Natour") owns a Dallas restaurant called Mignon.  Mignon operates under the legal name Enclare, LLC ("Enclare").  Defendant Scott Bickell ("Bickell") is the Vice President of Defendant Paide ("Paide").  In the Spring of 2019, Bickell approached Enclare to sell merchant processing services.  Bickell offered complimentary "pay at the time" EMV credit card devices[1]  and additional point of sale ("POS") support in exchange for switching Mignon's credit card processing business to Defendant Elavon. Inc. ("Elavon").[2]  Bickell offered the EMV credit card devices so that Plaintiffs could update existing protocol—swiping a magnetic strip—to the chip acceptance method.  Plaintiffs declined the offer.  Nevertheless, in May of 2019, Plaintiffs contracted to use Elavon's services in exchange for savings on their merchant processing fees and POS hardware.

---

[1] EMV devices use a smart chip instead of a magnetic strip to store data needed to process a transaction.

[2] Neither party explains the relationship between Paide and Elavon.  However, it is uncontested Bickell—a Paide employee—was selling Elavon's services.  Thus, the Court presumes there is some connection between the two entities.

A few months later, a different credit card processing company, Shift4, acquired the payment gateway Enclare used to bridge its POS to the Elavon credit card processing platform. Shift4 provided notice it was discontinuing services for merchants that had not upgraded their card acceptance protocols from the swipe method.  Bickell notified Plaintiffs of this change and again offered Plaintiffs EMV credit card devices so that Plaintiffs could update its existing protocol to the chip acceptance method.  Bickell also informed Natour that if Plaintiffs chose not to update the existing protocol, Enclare could switch from Elavon to another payment processing platform. Rather than update payment processing protocols, Plaintiffs switched to a different payment processing platform, First Data Merchant Services LLC ("First Data").[3]

Bickell emailed Natour a contract for First Data's services, which included a Merchant Processing Application and Agreement ("MPAA") and its incorporated Program Guide (the "Program Guide") (collectively, the "Agreement").  Defendants made the Agreement available on an internet portal for Natour to view and sign.  On September 23, 2019, Natour emailed Bickell a signed confirmation reflecting his receipt and acceptance of the Program Guide (the "Confirmation").  On September 25, 2019, Natour signed and returned the Agreement as the "Owner/Proprietor" of Enclare (Dkt. #103, Exhibit 4).[4]

In March of 2020, Ali Hamdan ("Hamdan") placed a catering order with Mignon that cost $170,528.35 (the "Order").  Hamdan used a Bank of America debit card, across two transactions, to pay for the Order (the "Transactions").  The Transactions were initially declined due to fraud concerns.  Notably, the account associated with the Bank of America debit card was closed in April of 2018.

---

[3] Again, neither side explains to the Court the connection between Paide, Elavon, or First Data.
[4] Plaintiffs allege in their Response that the signature is a forgery (Dkt. #143 ¶ 17).  The Court will address that argument further below.

Natour allegedly spoke to someone with Defendant Bank of America, N.A. and obtained a valid authorization code for the Transactions, and proceeded with the sale.  However, eight days later, Plaintiffs' account statement from One Payment reflected an adjustment (the "Adjustment") of the same amount of the Transactions under the heading "Electronic Deposit Rejects."  Plaintiffs never received payment for the Order.

On February 8, 2022, Defendants moved for summary judgment, asserting Plaintiffs have no evidence to sustain their claims for fraud by nondisclosure, fraud, conversion, civil conspiracy, and violation of the Texas Theft Liability Act (Dkt. #134).  Plaintiffs responded on February 28, 2022 (Dkt. #143).  Defendants replied on March 14, 2022 (Dkt. #145).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of

3

material fact.  FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.  If the movant bears the burden

of proof on a claim or defense for which it is moving for summary judgment, it must come forward

with evidence that establishes "beyond peradventure all of the essential elements of the claim or

defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Where the nonmovant

bears the burden of proof, the movant may discharge the burden by showing that there is an absence

of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning

News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for

summary judgment by setting forth particular facts indicating there is a genuine issue for trial."

*Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).  A nonmovant must present

affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477

U.S. at 257.  Mere denials of material facts, unsworn allegations, or arguments and assertions in

briefs or legal memoranda will not suffice to carry this burden.  Rather, the Court requires

"significant probative evidence" from the nonmovant to dismiss a request for summary judgment.

*In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson

v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)).  The Court must consider all of the

evidence but "refrain from making any credibility determinations or weighing the evidence."

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendants contend all of Plaintiffs' claims should be dismissed for the total lack of any

supporting evidence.[5]   Plaintiffs have brought claims for fraud by nondisclosure, fraud,

conversion, civil conspiracy, and violation of the Texas Theft Liability Act against Defendants.  In

---

[5] Paide also argues Natour, in his individual capacity, lacks standing to assert any of the alleged claims.  However, the Court need not address standing as it is disposing of all claims against Paide—as discussed further below.

response, Plaintiffs largely fall back on its newfound argument that the Agreement was a forgery. The Court will dispose of that argument now.

Plaintiffs' complaint of a forgery fails to raise a genuine issue of material fact on any of their claims.  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).  First, the only evidence of this brand-new assertion is a declaration from Natour himself, in which he merely states the signature "is a forgery and not my signature."   (Dkt. #143, Exhibit 1).  Natour's Declaration consists of three paragraphs, each consisting of only one sentence (Dkt. #143, Exhibit 1).  Natour does not elaborate, nor do Plaintiffs attach any supporting documents to Natour's Declaration other than one page from the Agreement. Second, Plaintiffs' pleaded the Agreement is a forgery for the first time in their responses to various Defendants' motions (*see* Dkt. ##138, 142, 143).  Given the timing, a flat denial from Natour, with no explanation or evidence, hardly constitutes competent summary judgment evidence.  *Forsyth*, 19 F.3d at 1533.  This is especially true given Plaintiffs rely on their Amended Complaint in which Plaintiffs repeatedly referenced the Agreement—specifically that Natour was the signatory as "Owner/Proprietor"—without ever mentioning the signature is a forgery (*See* Dkt. #103).  Natour's Declaration and Plaintiffs' sudden forgery argument seem like an insincere attempt to manufacture a factual dispute, when in fact, there is none.

The irony is not lost on the Court that Plaintiffs object to a Declaration from Bickell. Plaintiffs contend Bickell lacks personal knowledge of the exhibits attached to his Declaration and merely relied on the business records exception to the hearsay rule.  One of the attached exhibits is the Agreement, which Bickell has demonstrated personal knowledge of pursuant to Rule 602 as the party who facilitated the sale.  FED. R. EVID. 602.  Bickell's Declaration also establishes the

Agreement qualifies as a business record and is thus admissible.  FED. R. EVID. 803(6).  The other

attached exhibit is an email exchange between Bickell and Paide in which Bickell requests

Natour's signature and Natour responds with the signed paperwork attached (Dkt. #134, Exhibit 1-

A).  Thus, to allege Bickell lacks personal knowledge is odd to the Court.  As for any hearsay

contained in the email, the Court need not consider Bickell's statement for purposes of this motion,

and Natour's response is a statement by a party-opponent.  Fed. R. Evid. 801(d)(2)(A).

The Court will now turn to the fraud by nondisclosure claim.

## I.        Fraud by Nondisclosure

It is important to start by noting that a mere failure to disclose information does not

constitute fraud unless there is a duty to disclose such information.  *Bradford v. Vento*, 48 S.W.3d

749, 755–756 (Tex. 2001) ("failure to disclose information does not constitute fraud unless there

is a duty to disclose the information"); *Pellegrini v. Cliffwood-Blue Moon Joint Venture, Inc.*, 115

S.W.3d 577, 580–581 (Tex. App.—Beaumont 2003, no pet.) (finding there was no duty to disclose

information because both parties were experts in subject matter of contract and negotiations

involved an arms-length transaction); *Marshall v. Kusch,* 84 S.W.3d 781, 786 (Tex. App.—Dallas

2002, pet. denied) (holding original seller of ranch was under no duty to disclose anthrax outbreak

to subsequent purchaser who purchased ranch from different seller).

Generally, a duty to disclose may arise in four situations.  *BP Am. Prod. Co. v. Marshall*,

288 S.W.3d 430, 446 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 342 S.W.3d 59

(Tex. 2011).  First, if the parties have a confidential or fiduciary relationship, there may be a duty

to disclose.  *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 562 (Tex.

2019) (holding relationship between franchisor and prospective franchisee is not "special or

fiduciary one," so former had no duty to disclose).  Second, a person may assume a duty to disclose

when he or she voluntarily discloses partial information but fails to disclose the whole truth. *Marshall*, 288 S.W.3d at 446 (finding oil production company assumed duty to disclose whole truth when its agent voluntarily made representations concerning lease).  Third, a duty arises when a person makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue.  *Id.*  Finally, a duty arises when a person's partial disclosure conveys a false impression.  *See, e.g.*, *Nelson v. Najm*, 127 S.W.3d 170, 175 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (noting literally true statement that owner had no problem with government was nevertheless actionable because it created false impression).

Whether a duty to disclose exists is a question of law for the court.  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  Assuming such a duty existed, the plaintiff must still prove: (1) the defendant deliberately failed to disclose material facts; (2) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (3) the defendant intended the plaintiff to act or refrain from acting based on the non-disclosure; and (4) the plaintiff relied on the non-disclosure, which resulted in injury.  *Bombardier Aero. Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–220 (Tex. 2019).

Defendants argue no fiduciary relationship existed, and thus there was no duty to disclose any information Plaintiffs feel Paide omitted.  Further, Defendants argue Plaintiffs cannot identify any incomplete or missing information Defendants provided, or that Plaintiffs relied on such an omission.  Plaintiffs contend a fiduciary relationship arose out of Bickell's capacity as a sales representative to Plaintiffs.  Plaintiffs do not supply any law on why Bickell's position as a sales representative alone would create a fiduciary relationship—for either Bickell in his individual capacity or for Paide.  Plaintiffs have also not pointed to any facts or evidence showing Bickell, or another Paide employee, meets the other three scenarios in which a duty to disclose may arise.

7

For a no-evidence summary judgment motion, like the one here, Rule 56(c) places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex,* 477 U.S. at 323.  The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992).  Defendants carried their burden.  Accordingly, Plaintiffs had the burden of coming forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmovant may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Even viewing the evidence in the light most favorable to Plaintiffs, they have not carried their burden.  Plaintiffs failed to supply any facts or evidence which would show the Paide or Bickell owed Plaintiffs a duty to disclose certain information.  Nor is the Court aware of the information Paide allegedly failed to disclose.  Rather than supply that information, Plaintiffs instead made the conclusory allegation that the Agreement was a forgery.  As discussed above, Plaintiffs' response cannot carry the day.  Accordingly, Plaintiffs claim against Defendants for fraud by nondisclosure fails as a matter of law.

## II.     Fraud

As a general rule, the following elements must appear to constitute actionable fraud based on misrepresentation: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the

8

representation; and (6) the party thereby suffered injury.  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011); *Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam); *De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).  Each of these elements must be established in order for there to be recovery; the absence of any element is grounds for an instructed verdict.  *De Santis*, 793 S.W.2d 670, 688 (Tex. 1990); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

Defendants argue Plaintiffs have not provided any evidence that either Bickell or Paide— through its agents or employees—made an affirmative misrepresentation.  Additionally, Defendants argue even if an affirmative misrepresentation exists, Plaintiffs present no evidence on Paide or Bickell's intent.

Plaintiffs respond that a material misrepresentation appear in several documents.  However, most of the documents Plaintiffs' point to are not in the summary judgment record.  The only documents in the record are the Agreement and an email exchange between Natour and Bickell. [6] Plaintiffs argue the Agreement contains a misrepresentation because "the company listed is ELAVON and not PAIDE" (Dkt. #143 ¶ 30), and Natour believed Enclare was doing business with Paide.  However, Natour signed the Agreement with Elavon listed—again, the Court is not persuaded by arguments that his signature was a forgery—and took no apparent issue at the time with this alleged mislabeling.  Even if that label rises to the level of a representation, it was true. Natour was contracting for Elavon's services.  Natour's mistaken belief that the contract was with Paide is not a result of the Agreement listing Elavon as the company providing Plaintiffs its services, when that was in fact the case.  Plaintiffs have not pointed to any other affirmative

---

[6] Plaintiffs assert "blatant misrepresentations" appear throughout "PAIDE0000001-28" (Dkt. #143 ¶ 30).  However, Paide attached in support of its motion Bickell's Declaration (Dkt. ##134, Exhibit 1).  The only attachments to his Declaration are the Agreement and some emails, Bates numbered PAIDE 00013-00016.

misrepresentation Bickell made, or any other alleged misrepresentations in the Agreement.

Rule 56(c) requires Defendants to identify those portions of the record which they believe demonstrate the absence of a genuine issue of material fact.  *See Celotex,* 477 U.S. at 323. Defendants have carried their burden.  Plaintiffs failed to meet their burden to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  Thus, Plaintiffs' fraud claim fails as a matter of law and should be dismissed.

### III.    Conversion

Conversion is an offense against the possession of property.  *Staats v. Miller*, 240 S.W.2d 342, 345 (Tex. Civ. App.—Amarillo 1951), *rev'd on other grounds*, 150 Tex. 581, 243 S.W.2d 686 (1951).  Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the other person's rights.  *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971).  The elements of a claim for conversion are: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.  *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.); *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.).  That said, Plaintiffs' conversion claim is for money.  "Conversion claims for money must meet additional requirements." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012).

"An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific

money." *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). "Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal citations and quotation marks omitted).

Defendants argue they never had possession or control of the funds subject to the Adjustment, such funds do not constitute specific chattel, and Defendants never refused to return the funds—as neither Paide nor Bickell never had possession or control over the funds. Plaintiffs contend they had a right to payments because they supplied food and alcohol to Hamdan, which is a "basic bilateral contract" (Dkt. #143 ¶ 38). Thus, Plaintiffs argue they were entitled to immediate possession of the funds. Plaintiffs fail to supply any caselaw that an authorization code from a bank entitles the recipient of funds to immediate possession. In any event, Plaintiffs have presented zero evidence or legal argument regarding the additional elements for conversion of money.

Again, Rule 56(c) places the initial burden on Defendants to identify those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. Defendants met that burden and Plaintiffs failed to meet their burden to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. Thus, Plaintiffs' conversion claim fails as a matter of law and should be dismissed.

## IV.    Texas Theft Liability Act

The Texas Theft Liability Act ("TTLA") provides that a person who commits theft is liable

for the resulting damages.  TEX. CIV. PRAC. & REM. CODE § 134.003.  "The TTLA provides victims

of a theft . . . with a civil action to recover damages, fees, and costs from the thief."  *In re Powers*,

261 F. App'x 719, 721 (5th Cir. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 134.003.

For purposes of the TTLA, theft means unlawfully appropriating property or unlawfully

obtaining services as described by several sections of the Penal Code.  TEX. CIV. PRAC. & REM.

CODE § 134.002(2).    Theft is defined as "unlawfully appropriating property or unlawfully

obtaining services as described by Section 31.03" of the Texas Penal Code.  *See id.*  Section 31.03

of the Texas Penal Code provides:

> (a) A person commits an offense if he unlawfully appropriates property with intent
> to deprive the owner of property.
> (b) Appropriation of property is unlawful if:
>       (1) it is without the owner's effective consent;

TEX. PENAL CODE § 31.03(a)–(c); *see also Haler v. Boyington Cap. Grp., Inc.*, 411 S.W.3d 631,

635 (Tex. App.—Dallas 2013, pet. denied) ("A theft occurs when (1) property is (2) unlawfully

appropriated (3) by someone (4) with intent to deprive the owner of that property.").

First, "appropriate" means "to bring about a transfer or purported transfer of title to or other

nonpossessory interest in property" or "to acquire or otherwise exercise control over property other

than real property."  *See* TEX. PENAL CODE § 31.01(4).  Second, the definition of property includes

money.  *Id.* § 31.01(5)(c).  Third, to succeed on a TTLA claim, the plaintiff must show that the

defendant intended to unlawfully appropriate the property or obtain the services in question.

*See Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.).  "Even in cases

where there exists no evidence directly indicating an intent to steal property, it has been held that

such intent may be inferred from the words, actions, or conduct of the actor."  *Id.*  (internal citations

omitted).  The relevant time for determining whether a defendant had an intent to deprive in a

claim for violation of TTLA is defendant's intent at time of the taking. *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 906 (Tex. App.—Dallas 2014, no pet.).

Defendants contend Plaintiffs have supplied no evidence that they appropriated the funds—given neither Paide or Bickell posessed the ability to even access any of Plaintiffs' bank accounts and make the Adjustment—or that either Paide or Bickell had the requisite intent to appropriate. Plaintiffs allege they had a possessory interest in the funds, and Defendants unlawfully appropriated the funds through the Adjustment. However, Plaintiffs supply no evidence that Paide, and certainly not Bickell, had control over either the account Hamdan used to allegedly pay for the Order, or the account wherein Plaintiffs were supposed to receive the funds. Defendants, therefore, were in no position to appropriate the funds. Thus, Plaintiffs have failed to carry their burden to show a genuine issue of material fact exists as to the TTLA claim. Therefore, this claim should be dismissed.

## V.    Civil Conspiracy

A conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The essential elements of a conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.* A specific intent to agree to accomplish the unlawful purpose or to accomplish the lawful purpose by unlawful means is also required. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). A person who does not know the object of a conspiracy cannot be a conspirator because a person cannot agree to the commission of an unknown wrong. *Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). Further, conspiracy is a "derivative" tort, in that a defendant's

13

liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019); *Chu v. Chong Hui Hong*, 249 S.W.3d 441, 444 (Tex. 2008); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (finding if fraud claims properly maintainable, then claims of conspiracy related to fraud may be proper).

Conspiracy liability is established by proving concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of the common design, intention, or purpose of the alleged conspirators. *See e.g. Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581–582 (Tex. 1963) (drawing inference of concerted action from joint participation in the subject transactions and from enjoyment of the fruits of the transactions).

Defendants argue there is no evidence of an underlying tortious act, thus the conspiracy claim fails as well. The Court agrees. Because Plaintiffs have no claim for an underlying tort, the civil conspiracy claim fails as a matter of law. *Agar*, 580 S.W.3d at 142. Therefore, this claim should be dismissed.

## CONCLUSION

It is therefore **ORDERED** Defendants Paide and Scott Bickell's Motion for Summary Judgment (Dkt. #134) is hereby **GRANTED**.

It is further **ORDERED** that all claims against Defendant Paide and Defendant Scott Bickell are hereby **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

 **SIGNED this 22nd day of June, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE