# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| NICK NATOUR and ENCLARE, LLC, § <br> § <br> § <br> v. § <br> § <br> BANK OF AMERICA, N.A., *et al.* § <br> § | Civil Action No. 4:21-CV-00331 <br> Judge Mazzant |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is Defendant Bank of America, N.A.'s Motion for Summary Judgment (Dkt. #136). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED**.

### BACKGROUND

Plaintiff Nick Natour ("Natour") owns a Dallas restaurant called Mignon. Mignon operates under the legal name Enclare, LLC ("Enclare"). On September 25, 2019, Enclare entered a Merchant Processing Application and Agreement (the "Agreement") with First Data Merchant Services LLC ("First Data"), which enabled Enclare to accept payment through credit cards from its restaurant customers.

In March of 2020, Ali Hamdan ("Hamdan") placed a catering order with Mignon that cost $170,528.35 (the "Order"). Hamdan used a Bank of America debit card, across two transactions, to pay for the Order (the "Transactions"). The Transactions were initially declined due to fraud concerns. Notably, the account associated with the Bank of America debit card was closed in April of 2018 (the "Bank of America Account").

Natour allegedly spoke to Defendant Bank of America, N.A. ("Bank of America"),

---

[1] The Court enters this Amended Memorandum Opinion and Order to correct a clerical error on p. 9 *infra*.

obtained a valid authorization code for the Transactions, and proceeded with the sale. However, eight days later, Plaintiffs' account statement from One Payment (the "One Payment Account") reflected an adjustment (the "Adjustment") of the same amount of the Transactions under the heading "Electronic Deposit Rejects." As a result of the Adjustment, Plaintiffs never received payment for the Order.

On February 9, 2022, Bank of America moved for summary judgment, asserting Plaintiffs have no evidence to sustain their claims for violation of the Electronic Funds Transfer Act, conversion, violation of the Texas Theft Liability Act, and civil conspiracy (Dkt. #126). Plaintiffs responded on February 28, 2022 (Dkt. #142). Bank of America replied on March 7, 202 (Dkt. #145).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Bank of America contends all of Plaintiffs' claims against it should be dismissed for the total lack of any supporting evidence. Plaintiffs have brought claims for violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693 ("EFTA"), conversion, violation of the Texas Theft Liability

Act, and civil conspiracy against Bank of America. The Court will begin its analysis with the EFTA claim.

### I. Electronic Fund Transfer Act

Bank of America argues Plaintiffs' claim for violation of the EFTA fails as a matter of law because the EFTA is a consumer protection act and Plaintiffs are not "consumers" within the definition of the statute. Further, Bank of America contends no account existed at the time of the Transactions.[2] Plaintiffs assert Natour is a consumer and that an account did exist at the time of the Transactions.

#### A. Consumer

The EFTA defines "consumer" as "a natural person." 15 U.S.C. § 1693a(6). "Corporations or other business entities are not 'consumers' for the purposes of EFTA." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 402 (W.D.N.Y. 2010) (citing *Kashanchi v. Texas Com. Med. Bank, N.A.*, 703 F.2d 936, 939–42 (5th Cir. 1983). Thus, there is no doubt Enclare is not a consumer. *Id.* Plaintiffs appear to concede this point by only addressing whether Natour qualifies as a consumer.

Bank of America argues Natour is not a consumer because of the nature of his involvement in the Transactions. Specifically, Natour was acting as "a merchant or business who sold goods to the consumer" rather than for personal, family, or household purposes (Dkt. #136 at p. 11). This argument is only relevant to whether the Bank of America Account qualifies as an "account" under the EFTA. Because Natour is a natural person, he meets the EFTA's definition of "consumer."

#### B. Account

---

[2] Plaintiffs contend Bank of America's deposit Agreements and Disclosures (the "Deposit Agreement") mandates that Bank of America pay Plaintiffs. Bank of America argues the Deposit Agreement is not applicable, and even if it is, it does not mandate that Bank of America pay Plaintiffs. The Court needs not reach these arguments, though, because the EFTA claims fail for reasons set forth below.

There is confusion as to the relevant account for the Court's analysis under the EFTA. On the one hand, Bank of America focuses its arguments on the Bank of America Account. On the other hand, Plaintiffs argue the One Payment Account is a consumer account. Regardless, Plaintiffs have submitted no evidence that either account meets the EFTA's definition.

The EFTA defines an "account" as a:

> demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title), as described in regulations of the Bureau, *established primarily for personal, family, or household purposes,* but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement.

15 U.S.C. § 1693a(2) (emphasis added). The EFTA defines "account" by means of the purpose for which the account is "established." 15 U.S.C. § 1693a(2). The EFTA "asks only for what the account was established." *Frey v. First Nat'l Bank Sw.*, 602 Fed. App'x. 164, 169 (5th Cir. 2015). With this in mind, the Court will now turn to whether the One Payment Account meets the EFTA's definition.

### A. Plaintiffs' One Payment Account

In reviewing the record, Plaintiffs have provided no evidence to suggest that the One Payment Account was established for personal, family, or household purposes. Plaintiffs have not provided the Court with the application to open the One Payment Account, which would indicate whether Natour opened the One Payment Account in his individual capacity, or as the owner of Enclare, a business entity. *Cf. Ironforge.com*, 747 F. Supp. 2d at 402 (granting motion to dismiss EFTA claim where the plaintiffs were business entities and their accounts were therefore not consumer accounts but accounts established for a commercial purpose). Further, Plaintiffs have not alleged the One Payment Account was established primarily for personal, family, or household purposes. *Contra Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196, 209 (S.D. Tex. June 27,

2011) (finding allegations that account was a "checking account used primarily for personal or household purposes" sufficient to state a claim under the EFTA). Thus, Plaintiffs provide neither evidence nor allegations to show for what purpose Plaintiffs opened the One Payment Account.

In fact, the evidence Plaintiffs submitted undermines any contention that the One Payment Account was used for anything other than business purposes. The One Payment Account's statement from March of 2020 lists a "Merchant Number" and includes summaries of gross sales categorized by card type (Dkt. #103, Exhibit 2). Further, the statement reflects the Adjustment for the Order, which was placed with Mignon, a business. Such evidence leads the Court to infer the One Payment Account was likely established for commercial purposes. *Cf. Maynard v. PayPal, Inc.*, No. 18-CV-259, 2019 WL 3552432, at *10 (N.D. Tex. Aug. 5, 2019) (granting motion to dismiss EFTA claim where the "second amended complaint [did] not permit an inference that the . . . account in question was 'established primarily for personal, family, or household purposes'" but rather only the "inference that [it] was used for commercial transactions").

Rather than produce evidence to the contrary, Plaintiffs, for the first time, allege there is a "fraudulent contract, which is fraudulently signed by someone other than Plaintiff" (Dkt. #142 ¶ 14). The Court finds it difficult to discern how this argument provides evidence that the One Payment Account was established primarily for personal, family, or household purposes. The Court is also unsure which contract Plaintiffs refer to, although the Court believes Plaintiffs are referencing the Agreement with First Data. The Agreement lists Natour as the "owner/proprietor"—presumably of Mignon since the Agreement is for card processing services at the restaurant—in the signature block (Dkt. #103, Exhibit 4). However, Plaintiffs have not demonstrated the relationship between First Data and the One Payment Account. Plaintiffs have

actually alleged that Defendant Data Payment Systems, Inc. ("Data Payment"), doing business as One Payment, has a "secret contract" with Defendant Fiserv, Inc., also doing business as One Payment (Dkt. #103 ¶ 16). The Court is unsure how it is possible for One Payment to have a contract with itself. Further, Plaintiffs have not supplied any evidence to show any of these entities do business as One Payment. Defendants also deny Plaintiffs' allegations regarding whether any of the entities are doing business as One Payment (Dkt. ##108, 109, 152).

For many reasons, Plaintiffs' newfound complaints of a forgery fail to raise a genuine issue of material fact on whether the Bank of America Account qualifies as an "account" under the EFTA. First, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994). Second, even if the signature was a forgery, which the Court is dubious of, the Court did not consider the Agreement when evaluating whether the One Payment Account was established "primarily for personal, family, or household purposes" due to the murky connection between First Data, the Agreement, and the One Payment Account.

For a no-evidence summary judgment motion, like the one here, Rule 56(c) places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992). Bank of America has carried its burden regarding the One Payment Account. Accordingly, Plaintiffs had the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on the mere allegations or denials of its pleadings, but must

7

respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). Even viewing the evidence in the light most favorable to Plaintiffs, they have not carried their burden. Plaintiffs failed to supply any facts or evidence which would show the One Payment Account meets the EFTA's definition of "account." *See* 15 U.S.C. § 1693a(2). Instead, Plaintiffs made the conclusory allegation that the Agreement was a forgery. As discussed above, Plaintiffs' response cannot carry the day. Accordingly, Plaintiffs have not demonstrated that the EFTA applies to the One Payment Account.

### B. Hamdan's Bank of America Account

On the matter of what the Bank of America Account was established for, Plaintiffs have supplied zero evidence. Plaintiffs have not made any allegations on this point either. The only evidence the Court has is a bank statement which shows the Bank of America Account was closed on April 18, 2018 (the "Statement") (Dkt. #136, Exhibit 1-A), nearly two years prior to the Transactions.

Plaintiffs first argue the Statement is not admissible. However, a declaration from Mary Trevino ("Trevino Declaration")—the Vice President of Bank of America—shows the Statement qualifies as a business record and is thus admissible. FED. R. EVID. 803(6). Second, Plaintiffs rely on Natour's affidavit in an attempt show the Bank of America Account was not closed at the time of the Transactions. In his affidavit, Natour states he received an authorization code from Bank of America while on a conference call with Hamdan (Dkt. #142, Exhibit 2). Presumably Plaintiffs believe Bank of America would not have issued an authorization code had the Bank of America Account not existed. However, there are any number of reasons an employee may have mistakenly provided an authorization code, if that in fact happened.

Even assuming the Bank of America Account was still open, none of these arguments show whether the Bank of America Account was established primarily for personal, family, or household purposes as required by the EFTA. *See* 15 U.S.C. § 1693a(2). Thus, Plaintiffs' have not demonstrated the EFTA applies to the Bank of America Account.

Because Plaintiffs produced no evidence that either the One Payment Account or the Bank of America Account meet the statutory definition for "account," they have not demonstrated the EFTA applies. Therefore, Plaintiffs' claims under the EFTA fail as a matter of law.

## II.     Conversion

Conversion is an offense against the possession of property. *Staats v. Miller*, 240 S.W.2d 342, 345 (Tex. Civ. App.—Amarillo 1951), *rev'd on other grounds*, 150 Tex. 581, 243 S.W.2d 686 (1951). Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the other person's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971). The elements of a claim for conversion are: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*, 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.); *Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.). That said, Plaintiffs' conversion claim is for money. "Conversion claims for money must meet additional requirements." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012).

"An action will lie for conversion of money when its identification is possible and there is

an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). "Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal citations and quotation marks omitted).

Bank of America claims Plaintiffs have no evidence to support a conversion claim against it for the Adjustment because the funds did not exist—as the Bank of America account had been closed for years. Plaintiffs argue they had a right to payments because they supplied food and alcohol to Hamdan, which is a "basic bilateral contract" (Dkt. #142 ¶ 20). Thus, Plaintiffs argue once Bank of America supplied the authorization code, the funds became Plaintiffs' property (Dkt. #142 ¶ 22). Plaintiffs fail to supply any caselaw that an authorization code from a bank entitles the recipient of funds to immediate possession. In any event, Plaintiffs have presented zero evidence or legal argument regarding the additional elements for conversion of money.

Again, Rule 56(c) places the initial burden on Bank of America to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323. Bank of America has carried its burden and Plaintiffs failed to meet their burden to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. Thus, Plaintiffs' conversion claim fails as a matter of law and should be dismissed.

### III.     Texas Theft Liability Act

The Texas Theft Liability Act ("TTLA") provides that a person who commits theft is liable

for the resulting damages. TEX. CIV. PRAC. & REM. CODE § 134.003. "The TTLA provides victims of a theft . . . with a civil action to recover damages, fees, and costs from the thief." *In re Powers*, 261 F. App'x 719, 721 (5th Cir. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 134.003.

For purposes of the TTLA, theft means unlawfully appropriating property or unlawfully obtaining services as described by several sections of the Penal Code. TEX. CIV. PRAC. & REM. CODE § 134.002(2). Theft is defined as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03" of the Texas Penal Code. *See id.* Section 31.03 of the Texas Penal Code provides:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
> (b) Appropriation of property is unlawful if:
>     (1) it is without the owner's effective consent;

TEX. PENAL CODE § 31.03(a)–(c); *see also Haler v. Boyington Cap. Grp., Inc.*, 411 S.W.3d 631, 635 (Tex. App.—Dallas 2013, pet. denied) ("A theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property.").

First, "appropriate" means "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property" or "to acquire or otherwise exercise control over property other than real property." *See* TEX. PENAL CODE § 31.01(4). Second, the definition of property includes money. *Id.* § 31.01(5)(c). Third, to succeed on a TTLA claim, the plaintiff must show that the defendant intended to unlawfully appropriate the property or obtain the services in question. *See Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.). "Even in cases where there exists no evidence directly indicating an intent to steal property, it has been held that such intent may be inferred from the words, actions, or conduct of the actor." *Id.* (internal citations omitted). The relevant time for determining whether a defendant had an intent to deprive in a

claim for violation of TTLA is defendant's intent at time of the taking. *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 906 (Tex. App.—Dallas 2014, no pet.).

Bank of America contends Plaintiffs have supplied no evidence that Bank of America appropriated the funds or had the requisite intent to appropriate. Bank of America notes Plaintiffs offer only the allegation that "Defendants stole $170,518.35 with the intent to permanently deprive the Plaintiff of his product and money" (Dkt. #103 ¶ 213) without providing any supporting evidence on intent. Plaintiffs allege the Adjustment was indeed intended to deprive Plaintiffs of the money owed for the Order. However, Plaintiffs may not rest on the mere allegations or denials of its pleadings, but must instead respond by setting forth specific facts indicating a genuine issue for trial. *Webb*, 139 F.3d at 536. Plaintiffs admit in their response "it is unclear as to why Defendant would give an authorization code" and "then for some unknown reason to Plaintiff, took back the approval without any real explanation" (Dkt. #142 ¶ 29). By their own admission, Plaintiffs have no argument, explanation, or evidence regarding Bank of America's alleged intent to unlawfully appropriate the funds. Thus, Plaintiffs have failed to carry their burden to show a genuine issue of material fact exists as to the TTLA claim. Therefore, this claim should be dismissed.

### IV.   Civil Conspiracy

A conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The essential elements of a conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id*. A specific intent to agree to accomplish the unlawful purpose or to accomplish the lawful purpose by unlawful means is also

required. *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). A person who does not know the object of a conspiracy cannot be a conspirator because a person cannot agree to the commission of an unknown wrong. *Schlumberger Well Sur. Corp. v. Nortex Oil & G. Corp.*, 435 S.W.2d 854, 857 (Tex. 1968). Further, conspiracy is a "derivative" tort, in that a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019); *Chu v. Chong Hui Hong*, 249 S.W.3d 441, 444 (Tex. 2008); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (finding if fraud claims properly maintainable, then claims of conspiracy related to fraud may be proper).

Conspiracy liability is established by proving concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of the common design, intention, or purpose of the alleged conspirators. *See e.g. Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581–582 (Tex. 1963) (drawing inference of concerted action from joint participation in the subject transactions and from enjoyment of the fruits of the transactions).

Bank of America argues there is no evidence of an underlying tortious act, nor is there evidence of Bank of America's alleged intent to accomplish an unlawful purpose. The Court agrees. Because Plaintiffs have no claim for an underlying tort, the civil conspiracy claim fails as a matter of law. *Agar*, 580 S.W.3d at 142. Therefore, this claim should be dismissed.

## CONCLUSION

It is therefore **ORDERED** Defendant Bank of America, N.A.'s Motion for Summary Judgment (Dkt. #136) is hereby **GRANTED**.

It is further **ORDERED** that all claims against Defendant Bank of America, N.A are

13

dismissed with prejudice.

**IT IS SO ORDERED.**

**SIGNED this 22nd day of June, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE