IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **NICK NATOUR and ENCLARE, LLC**  §<br>§<br>*Plaintiffs*,  §<br>§<br>v.  §<br>§<br>**BANK OF AMERICA, NA, ALI HICHAM** §<br>**HAMDAN, SCOTT BICKELL, LUIS A.** §<br>**REQUEJO, PAIDE, DATA PAYMENT** §<br>**SYSTEMS, INC., ONE PAYMENT** §<br>**SERVICES, a defunct entity, and** §<br>**ELAVON, INC.** §<br>§<br>*Defendants*. | CASE No. 4:21-CV-00331-ALM |

---

**DEFENDANT DATA PAYMENT SYSTEMS, INC.'S
MOTION FOR ATTORNEY'S FEES AND BRIEF IN SUPPORT**

---

Defendant, DATA PAYMENT SYSTEMS, INC. ("DPS"), pursuant to the Texas Theft Liability Act ("TTLA"), the Electronic Fund Transfer Act ("EFTA"), 28 U.S.C. § 1927, Federal Rule of Civil Procedure 54, and this Court's Final Judgement (Dkt. #228), hereby files this Motion for Award of Attorneys' Fees and Brief in Support (the "Motion for Fees"), and in support states as follows:

### BACKGROUND

On March 25, 2021, Plaintiffs Nick Natour and Enclare, LLC (collectively, "Plaintiffs") filed suit in the 296th Judicial District of Collin County, Texas against Bank of America, N.A. ("Bank of America"), Ali Hicham Hamdan ("Hamdan"), Scott Bickell, Luis A. Requejo, Paide, Data Payment Systems, Inc. ("Data Payment"), One Payment Services, and Elavon, Inc. (Dkt. #3). On April 26, 2021, Bank of America removed the case to federal court based on federal and supplemental jurisdiction (Dkt. #1). Later, Plaintiffs added Fiserv, Inc. as a party (Dkt. #103). By



the time of Trial on March 7, 2023, the only remaining Defendants were Data Payment and Hamdan.

All of Plaintiffs' claims derived from a common set of facts: Plaintiff Enclare, LLC owns and operates a restaurant, Mignon, in Plano, Texas. Plaintiff Nick Natour is the manager for Enclare. Data Payment is a sales representative for First Data (Mignon's merchant processor). These claims arise out of two transactions the Plaintiffs received in March of 2020. The transactions were unusually large and suspicious. Bank of America declined each transaction, but Mr. Natour, by obtaining an authorization code from an unknown third-party, was able to seemingly force the transactions through the system. Afterwards, the Plaintiffs allegedly delivered the merchandise to the purported buyer. A few days later, First Data adjusted Mignon's merchant account balance since the transactions were not completed. No funds ever changed hands.

Until this Court's order dated March 3, 2023, (Dkt. #215) it was unclear whether all the EFTA claims were dismissed entirely or the ones against DPS remained, as such, DPS's counsel continued to prepare for Trial on all claims asserted against it in Plaintiffs' Amended Complaint. On March 7, 2023, trial on this matter began. At the end of Plaintiffs' case in chief, DPS moved for directed verdict which this Court granted as to all claims. On March 9, 2023, this Court entered Final Judgement in the case dismissing with prejudice all claims against DPS and further ruled that "Defendants shall have and recover of and from Plaintiffs reasonable and necessary attorney's fees as prevailing parties pursuant to the Texas Theft Liability Act." (Dkt. #228). This Motion follows in accordance with this Court's determination of entitlement to attorneys' fees.

/

/

/

## **MEMORANDUM OF LAW**

**I.     Motion for Fees Following Judgment, Generally**

Federal Rule of Civil Procedure 54 governs the award of attorney's fees and costs following entry of a judgment. Rule 54 provides in relevant part:

> (d) Costs; Attorney's Fees.
> (1) Costs Other Than Attorney's Fees. Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. […]. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.[1]
> (2) Attorney's Fees.
> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

Fed. R. Civ. P. 54(d).

**II.    DPS Entitlement to Attorneys' Fees.**

    **1.     As the Prevailing Party, DPS is Entitled to its Attorneys' Fees Pursuant to the Theft Act.**

This Court's Final Judgement (Dkt. #228) entitles DPS to recover reasonable attorney's fees as the prevailing party in the case. Under the Theft Act, awards of court costs and reasonable and necessary attorney's fees are mandatory to the prevailing party. TEX. CIV. PRAC. & REM. CODE § 134.005(b); *Transverse, L.L.C. v. Iowa Wireless Services, L.L.C.*, 992 F.3d 336, 345 (5th Cir. 2021); *Arrow Marble, LLC v. Estate of Killion*, 441 S.W.3d 702, 705–06 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Defendants who successfully defend Theft Act claims are "prevailing parties." *Arrow Marble, LLC*, 441 S.W.3d at 706; *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.,* 150 S.W.3d 682, 686 (Tex. App.―Houston [14th Dist.] 2004, no pet.).

---

[1] DPS shall file a separate Bill of Costs in accordance with Local rue CV-54.



Further, a prevailing defendant is entitled to attorney's fees under the Theft Act "without any prerequisite that the claim is found to be groundless, frivolous, or brought in bad faith." *Air Routing Int'l Corp. (Canada),* 150 S.W.3d at 686.

Here, and as ordered by the Court, DPS is a prevailing party on Plaintiffs' asserted theft claim because it obtained judgment as a matter of law on the same at trial.

### a. Segregation of Fees for Different Claims

The party requesting fees must segregate recoverable fees from fees incurred in furtherance of claims for which fees are not authorized. *Transverse, L.L.C.*, 992 F.3d at 344; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). The segregation obligation, however, exists only if the requested fees "relate solely to a claim for which such fees are unrecoverable." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14 (segregation not required "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible"); *Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017) (work that serves only claims for which fees are not recoverable requires segregation). Fees are not disallowed merely because the work served claims for which fees are recoverable and claims for which fees are not. *Tony Gullo Motors,* 212 S.W.3d at 313.

The extent to which segregation is possible and thus required presents a mixed question of law and fact, requiring a trial court to evaluate "a host of details," including credibility questions and "who had to do what." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313–14. Rather than "burdensome retrospective itemizations by claim," the Fifth Circuit has approved segregation premised on a percentage allocation for the fees that would likely have been incurred if the non- fee generating claims were not in the case. *Traverse*, LLC, 992 F.3d at 346-47; *Bear*



Ranch, LLC v. Heartbrand Beef, Inc., No. 6:12-CV-14, 2016 WL 1588312, at *4 (S.D. Tex. Apr. 20, 2016)

To the extent work to defeat the Theft Act claim also served double duty in assisting to defeat other claims the time need not be segregated. *See Tony Gullo Motors I, L.P.*, 212 S.W.3d at 313. All of Plaintiffs' claims are based on the same set of facts. Further, Plaintiffs' conspiracy claim was premised on the defendants' alleged theft (Dkt. #103 ¶¶ 191-199). Fees incurred in defeating the conspiracy claim should, therefore, be recoverable. *See Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 643–44 (Tex. App.—Dallas 2016, no pet.) (concluding segregation not required for fees incurred in defending conspiracy to commit theft, since defendants could not have prevailed on the claim without also prevailing on a Theft Act claim).

Time incurred on the related claims would have been required regardless of whether the Excluded Claims were pleaded and is thus recoverable as necessary to defeat the Theft Act claim. *See Brinson Benefits, Inc.*, 501 S.W.3d at 643-44; *Namdarkhan v. Glast, Phillips & Murray, P.C.*, No. 05-18-00802-CV, 2020 WL 1969507, at *14 (Tex. App.—Dallas Apr. 24, 2020, pet. denied) (rejecting segregation obligation necessitated by abusive litigation tactics); *see also*, *e.g.*, *Baxter v. Crown Petroleum Partners 90-A*, 2000 WL 269747, at *4 (N.D. Tex. Mar. 10, 2000) ("A party cannot contest every issue and every claim and then complain that the fees should have been less because it could have tried the case with less resources and fewer hours.").

Here, DPS was forced to defend against Plaintiffs' duplicitous claims of EFTA violations, Theft, Conversion, Estoppel, Tortious Interference, Fraud, and Conspiracy all premised on a common set of facts and asserted unintelligibly in the initial complaint (Dkt. #3). DPS drafted and filed a Motion to Dismiss for Failure to State a Claim (Dkt. #110). This Court ordered Plaintiffs to amend the complaint to fix such deficiencies (Dkt. #100), yet Plaintiffs'



Amended Complaint (Dkt. #103) is almost identical to their original complaint and again unintelligibly raises the same claims against DPS. DPS was forced to respond to the amended complaint and accordingly prepared and drafted its Answer and Affirmative Defenses (Dkt. #152). DPS also drafted and prepared a Motion for Summary Judgment against all of Plaintiffs' claims (Dkt. #194) and defended against Plaintiff's Motion to Strike the same (Dkt. #197). However, this Court granted the Motion to Strike. Accordingly, DPS had to retain local counsel, prepare for trial and travel to Texas to try this case. Due to the overlap in issues and facts, DPS cannot segregate or differentiate the fees incurred in connection with one claim versus the theft Claim and requests the entry of a judgment awarding all reasonable and necessary fees incurred in this action.

      **b.**      **The Requested Fees are Reasonable and Necessary**

"The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable." *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1990); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The lodestar method is generally used to for calculate reasonable and necessary fees, but the market method may also be acceptable. *El Apple I, Ltd.*, 370 S.W.3d at 760; *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).

The lodestar analysis is a two-step process. *El Apple*, 370 S.W.3d at 760. **First,** courts determine the reasonable hours spent by counsel and the reasonable hourly rate, and then multiply the two together to get the base fee or lodestar. *Id.* **Second,** courts adjust the lodestar up or down as appropriate based on the factors found in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

      The *Johnson* factors are:

      (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required;



> (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Gonzales*, 72 S.W.3d at 412 (citing *Johnson*, 488 F.2d at 717–19). "If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments." *Id.* The lodestar is presumptively reasonable and should be modified only in exceptional cases. *El Apple*, 370 S.W.3d at 765.

### i.    Reasonableness of Hourly Rates

"The reasonably hourly rate is the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (internal quotations omitted). The community where the district court sits is the relevant legal community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Affidavits of attorneys practicing in the community are generally sufficient proof to establish the reasonable hourly rate. *Tollett*, 285 F.3d at 368; *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 491 (5th Cir. 2012) (discussing attorneys' fees in a discovery dispute). The trial court may also exercise its own expertise and judgment in making an independent valuation of appropriate attorney's fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

Here, the law firm of Barakat + Bossa, DPS's attorneys, did most of the substantive work in the case. Barakat + Bossa hourly rates for attorneys range from $250.00 to $550.00. The primary attorney working in this case was Partner, Brian Barakat who has a long-standing relationship with the client and who supervised the local counsel, associates, law clerks, and paralegals working in the matter. Paralegals and law clerks provided support in drafting pleadings and motions, and in



preparing for trial and their billable hours range from $125.00 to $210.00. *See attached Mr. Barakat's affidavit as* **Exhibit 1**.[2] In total, DPS incurred fees from Barakat + Bossa in the amount of $79,560.70.

Further, pursuant to local rules, DPS had to retain local counsel to assist in defending this case. Initially, DPS retained the firm of Bell Nunnally, and its billable hours range from $725.00 to $240.00. The relationship with Bell Nunnally ended at the end of July, 20222.  In total, DPS incurred fees from Bell Nunnally in the amount of $114,90.00 Shortly, before trial, DPS retained Johnston Clem Gifford PLLC, in Dallas to assist as local counsel in preparation for and during trial. Billable hours for attorneys from Johnston Clem Gifford ranged from $400.00 to $500.00, and $280.00 for paralegals. In total, DPS incurred fees from Johnston Clem Gifford PLLC in the amount of $12,288.00.

### ii.     Hours Expended

The work by DPS's attorneys in defending it from the claims asserted by Plaintiffs totaled 198.8 hours. That includes preparing and filing an emergency motion to set aside the default against DPS, which had been procured without notice by the Plaintiff despite full knowledge that DPS was represented and defending, filing a motion to dismiss for failure to state a claim, defending against Plaintiff's second motion for default against DPS, preparing a responsive pleading to the amended complaint, drafting a motion for summary judgment, engaging in settlement discussions with opposing counsel, preparing for trial, attending to the pretrial conference, jury selection and successfully trying the case before this Court.

---

[2] Portions of the invoices of counsel for DPS have been redacted to protect attorney-client communications and work product in accordance with the attorney-client and work production privileges. Clean copies of the invoices can be provided to the Court for in-camera review if necessary.

### iii.    Johnson Factors

After the lodestar amount is determined, the district court may adjust it up or down in accordance with the relevant *Johnson* factors not already included in the lodestar. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). The lodestar amount already includes four of the *Johnson* factors: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation *Id.* Here, none of the *Johnson* factors require an adjustment for the fees requested.

### 2.    Alternative fee theories.

To the extent that the Plaintiff argues that certain billing entries are exclusively for other claims, there are other theories of law which would provide additional entitlement. As such, they are briefed here to cover as many legal basis for fees as may prove necessary.

### i.    In the alternative, DPS is entitled to Attorney's Fees under the EFTA.

The EFTA provides that "on a finding by the court that an unsuccessful action under this section was brought in bad faith or for purposes of harassment, the court shall award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C.A. § 1693m(f) (emphasis added). *See also Maynard v. PayPal, Inc.*, No. 3:18-CV-0259-D, 2019 WL 3552432, at **11-12 (N.D. Tex. Aug. 5, 2019) (requiring plaintiffs to pay defendants' attorney's fees after dismissing EFTA claim).

Here, Plaintiffs brought the instant EFTA action against Data Payment in bad faith. The Plaintiffs' original Complaint and the Amended Complaint unintelligibly seems to attempt to assert an EFTA violation against Data Payment without properly identifying the accounts it references. Data Payment was forced to defend against this claim up until the eve before trial where Plaintiff, in the pre-trial conference, asserted it believed all EFTA claims were dismissed



by this Court's order dated nearly 8 months prior. (Dkt. #186).

Therefore, DPS is therefore entitled to its fees and costs under the EFTA since it was forced to prepare to defend against this action up until the last minute in bad faith by Plaintiffs.

> **ii.     Plaintiff is also entitled to fees and costs for all claims under 28 U.S.C. § 1927.**

Section 1927 allows a party to recover fees and costs from an attorney who "unreasonably and vexatiously" multiplies legal proceedings, which only requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." 28 U.S.C. § 1927; *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). The Fifth Circuit explained that "the willful continuation of a suit known to be meritless" amounted to bad faith. *Id.; see also Morrison v. Walker*, 939 F.3d 633, 637-38 (5th Cir. 2019) ("Conduct is unreasonable and vexatious if there is evidence of the persistent prosecution of a meritless claim and of a reckless disregard of the duty owed to the court."); *Western Fidelity, et al. v. Bishop*, No. 4:01-MC-0020, 2001 WL 34664165, at *22 (N.D. Tex. June 26, 2001). ("[U]nreasonably and vexatiously" means: "[C]onduct that, when viewed under an objective standard, is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense, or position that is or should be known by a lawyer to be unwarranted in fact or law or is advanced for the primary purpose of obstructing the orderly process of the litigation"). And "a district court may invoke [28 U.S.C. § 1927] to award fees and costs for an entire course of proceedings if the case should never have been brought in the first place." *Strain v. Kaufman Cnty. Dist. Attorney's Off.*, 23 F. Supp. 2d 698, 702 (N.D. Tex. 1998).

In the instant case, the initial Complaint asserted unintelligible claims against multiple parties in a manner deficient to inform DPS of the claims being asserted against it (Dkt. #3). This Court ordered Plaintiffs to amend the complaint to fix such deficiencies (Dkt. #100), yet



Plaintiffs' Amended Complaint (Dkt. #103) is almost identical to their original complaint and again unintelligibly raises the same claims against DPS. Throughout the case, Plaintiffs' counsel was completely unprofessional and refused to cooperate with counsel's settlement efforts.

Plaintiffs refused to cooperate with serious settlement discussions before trial. Pursuant to the court order Data Payment attempted to confer with Plaintiffs regarding the entry of a pre-trial order, however, Plaintiffs unilaterally submitted the proposed order without DPS's authorization claiming it was a joint order (Dkt. #213). Accordingly, DPS had to file a unilateral proposed pre-trial order explaining the situation to the court (Dkt. #214). At the pre-trial conference, Plaintiff attempted to delay the case by claiming this Court had lost jurisdiction over the claim 8 months prior (Dkt. #215). Finally, the day before trial was set to begin, Plaintiffs moved for a continuance alleging Plaintiffs' lead counsel's health concerns, although other attorneys were available, the medical concerns were undisclosed and unsupported. Plaintiffs' lead counsel still appeared at trial. (*See* Dkt. #218).

At trial, Plaintiffs only presented two of their 17 listed exhibits. When it became apparent that the Plaintiffs had not even prepared evidence binders as required by the court, the DPS had them printed and bound mid trial. When DPS attempted to use Plaintiffs' own exhibits, Plaintiffs repeatedly objected claiming their own evidence was irrelevant. Plaintiffs listed and presented only one witness at trial, with contradictory testimony, and Plaintiffs made no other effort to substantiate Plaintiffs' testimony or their claims. Plaintiffs' claims were so deficient of factual support, that Plaintiffs failed to meet their burden as to any element of their claims in trial, as reflected on the Final Judgment. Plaintiffs were entirely unprepared for trial, after having nearly 2 years to prepare.

Plaintiffs' counsel's conduct in pursuit of these claims is unreasonable and vexatious. As

such, DPS is entitled to recover reasonable attorney's fees and costs under 28 U.S.C. § 1927.

## CONCLUSION

DPS is entitled to their reasonable and necessary attorney's fees and costs under the TTLA, the EFTA, and 28 U.S.C. § 1927. The hourly rates and hours expanded of the attorneys working on this case for DPS are reasonable and necessary. DPS is entitled to an award of attorney's fees in the amount of $195,261.40. As such, DPS respectfully requests that this Court enter a final judgment for attorneys' fees in the amount of $195,261.40.

**WHEREFORE**, for the foregoing reasons, Defendant DATA PAYMENT SYSTEMS, INC., respectfully requests that this Court enter a Final Judgment granting this Motion, granting an award of attorney's fees in the amount of $195,261.40, plus post judgment interest, and any other relief this Courts deems just and proper.

Respectfully submitted,

*/s/ Brian Barakat*
Brian Barakat Esq., *Pro Hac Vice*
Florida Bar No.: 0457220
*Attorney for Defendant Data Payment Systems, Inc.*
BARAKAT + BOSSA
2701 Ponce de Leon Blvd, Suite 202
Coral Gables, FL 33134
Telephone: (305) 444-3115
service@b2b.legal
barakat@b2b.legal.com

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on March 21, 2023, he sent to Plaintiffs' counsel via e-mail a copy of the foregoing motion and affidavit in support and requested their input on the fees requested herein. The undersigned counsel also called Plaintiffs' counsel on March 21, 2023, to follow up. As of the date and time of this filing, Plaintiffs' counsel has not responded.



*/s/ Brian Barakat*
Brian Barakat Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via the Court's ECF filing system on all counsel of record on this 22nd day of March, 2023.

*/s/ Brian Barakat*
Brian Barakat Esq.

