# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| NICK NATOUR and ENCLARE, LLC, § <br> *Plaintiffs,* § <br> v. § <br> § <br> BANK OF AMERICA, N.A., *et al.*, § <br> *Defendants.* § <br> § <br> § | Civil Action No. 4:21-cv-00331 <br> Judge Mazzant |

## AMENDED MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Data Payment Systems, Inc.'s Motion for Attorneys' Fees (Dkt. #232). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **GRANTED in part**.[1]

### BACKGROUND

On March 25, 2021, Plaintiffs Nick Natour and Enclare, LLC filed suit in the Texas district court for the 296th Judicial District of Collin County, Texas against Bank of America, N.A. ("Bank of America"), Ali Hicham Hamdan ("Hamdan"), Scott Bickell, Luis A. Requejo, Paide, Data Payment Systems, Inc. ("DPS"), One Payment Services, and Elavon, Inc. (Dkt. #3). Plaintiffs brought claims for "estoppel, breach of contract, violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693h [("EFTA")], fraud by nondisclosure, conversion, common law fraud, tortious interference with existing contract, civil conspiracy, and theft of property (Dkt. #216 at p. 4). Plaintiffs also claimed they were entitled to recover attorneys' fees under the Texas Theft Liability Act ("TTLA") (Dkt. #103 at pp. 39–41).

---

[1] The Court enters this Amended Memorandum Opinion and Order to correct a typographical error in the final awarded amount.

On April 26, 2021, Bank of America removed the case to federal court based on federal and supplemental jurisdiction (Dkt. #1). Later, Plaintiffs added Fiserv, Inc. as a party (Dkt. #103). By the time of trial, only two defendants remained: DPS and Hamdan.

Approximately one month after Plaintiffs filed this suit, DPS retained Brian Barakat of the law firm Barakat + Bossa ("B+B") (*see* Dkt. #232, Exhibit 1 at p. 38). Shortly after that, DPS retained Bell Nunnally as local counsel (*see* Dkt. #232, Exhibit 1 at p. 7). "The relationship with Bell Nunnally ended at the end of July 2022[]" (Dkt. #232 at p. 8). Then, shortly "before trial, DPS retained Johnston Clem Gifford PLLC, in Dallas to assist as local counsel in preparation for and during trial" (Dkt. #232 at p. 8).

On March 7, 2023, the Court held a trial on the merits (Dkt. #224, Minute Entry). Two attorneys from B+B attended trial: Mr. Barakat and Alfredo Dally (*see* Dkt. #230 at p. 2). After both parties rested, DPS moved for directed verdict (Dkt. #224, Minute Entry at 4:19 p.m.). The Court orally granted DPS's motion for directed verdict (Dkt. #224, Minute Entry at 4:31 p.m.). On March 9, 2023, the Court entered its Final Judgment (Dkt. #228). The Court ordered that Plaintiffs' claims against DPS were dismissed with prejudice (Dkt. #228 at p. 1). It also ordered that DPS "shall have and recover of and from Plaintiffs reasonable and necessary attorney's fees as prevailing parties pursuant to the [TTLA], . . . in an amount to be presented by motion, to be filed no later than 14 days after the date this Judgment is signed, and to be determined by this Court" (Dkt. #228 at pp. 1–2).

On March 22, 2023, DPS filed this Motion for Attorneys' Fees (Dkt. #232). On April 27, 2023, Plaintiffs responded (Dkt. #238). On May 4, 2023, DPS replied (Dkt. #239).

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Under Texas law, it is the movant that bears the burden of proof to show the reasonable fees they are owed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (applying substantive federal law because it is a federal cause of action but also discussing Texas's adoption of the lodestar method in other cases). The movant may calculate their reasonable and necessary attorneys' fees using either the lodestar method or the market value method. *Id.*; *AMX Enters. v. Master Realty Corp.*, 283 S.W.3d 506, 515 (Tex. App.—Fort Worth 2009, no pet.). There are certain causes of action, which require the use of the lodestar calculation. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013). However, even if it is not required, if the movant produces evidence of the lodestar calculation, courts typically apply the lodestar calculation. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013).

Using the lodestar analysis, the computation of a reasonable attorneys' fee award is a two-step process.[2] *El Apple*, 370 S.W.3d at 760 (citing *Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 412 (Tex. App.—El Paso 2002, pet. denied)). First, courts determine the reasonable hours spent by counsel and a reasonable hourly rate, and then multiplies the two together to get the base fee or lodestar. *Id.* (citing *Gonzales*, 72 S.W.3d at 412). Second, courts adjust the lodestar up or down based on relevant factors, found in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[3]

---

[2] Although state law applies, Texas courts occasionally "draw on the far greater body of federal court experience with lodestar." *El Apple*, 370 S.W.3d at 764–65.

[3] Texas courts also use a similar set of factors, the *Arthur Andersen* factors, to determine reasonableness. However, when courts use the lodestar calculation they tend to use the *Johnson* factors.

>The *Johnson* factors are:
>
>(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Gonzales*, 72 S.W.3d at 412 (citing *Johnson*, 488 F.2d at 717–19). "If some of these factors are accounted for in the lodestar amount, they should not be considered when making adjustments." *Id.* (citing *Guity v. C.C.I. Enter., Co.*, 54 S.W.3d 526, 529 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The lodestar is presumptively reasonable, and should be modified only in exceptional cases. *El Apple*, 370 S.W.3d at 765.

## ANALYSIS

"The TTLA entitles 'each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees.'" *United My Funds, LLC v. Perera*, No. 4:19-cv-00373-ALM, Dkt. #139 at p. 5 (E.D. Tex. Dec. 18, 2020) (quoting TEX. CIV. PRAC. & REM. CODE § 134.005(b)). "A prevailing party is one that 'receive[s] affirmative judicial relief.'" *Id.* (quoting *Intercontinental Grp. P'ship v. KB Home Loan Star, L.P.*, 295 S.W.3d 650, 656 n.27 (Tex. 2009)). "To prevail in a [TTLA] suit, a plaintiff must obtain a finding that the defendant committed theft as defined in specified sections of the Penal Code. Conversely, a defendant who prevails must establish he did not commit theft." *Id.* (quoting *Travel Music of San Antonio, Inc. v. Douglas*, 04-00-00757-CV, 2002 WL 1058527, at *3 (Tex. App.—San Antonio May 29, 2002, pet. denied)).

DPS moves for attorneys' fees under the TTLA (Dkt. #232 at p. 3). Because DPS "successfully defended the merits of the [TTLA] claim," it prevailed under the TTLA. *Travel*

4

*Music*, 2002 WL 1058527, at *3. The Court ordered that DPS "shall have and recover of and from Plaintiffs reasonable and necessary attorney's fees as [a] prevailing part[y] pursuant to the [TTLA] . . ." (Dkt. #228 at p. 1). So the Court moves on to the merits of DPS's motion for reasonable fees.

In Plaintiffs' response, they characterize DPS's requests for fees as "unreasonable, unsupported, and inflated" (Dkt. #238 at p. 1) for three main reasons: (1) the use of local counsel, (2) the fees incurred for defending the EFTA claim, and (3) the unnecessary and disparate bills for travel time.

As a preliminary matter, the Court addresses the issue of the reasonable hourly rate. When an attorney's customary billing rate "is not contested, it is prima facie reasonable." *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990) (quoting *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989)). So, absent specific objection from Plaintiffs, the Court will presume any hourly rates presented by DPS are reasonable.

The Court will now address Plaintiffs' arguments from their response.

**I.    Costs for Local Counsel**

In the process of defending this lawsuit, DPS retained two different firms as local counsel: Bell Nunnally and Johnston Clem Gifford PLLC (Dkt. #232 at p. 8). DPS retained Bell Nunnally until July 2022 (Dkt. #232 at p. 8), and it retained Johnston Clem Gifford "[s]hortly[] before trial" to assist with trial preparation and with the trial itself (Dkt. #232 at p. 8). In its motion, DPS claims that "pursuant to local rules, DPS had to retain local counsel to assist in defending this case" (Dkt. #232 at p. 8). Plaintiffs respond that "[t]here is no such requirement in the Eastern District of Texas Local Rules that states an out of state counsel, or out of district counsel must have local counsel," and thus any fees incurred by Bell Nunnally and Johnston Clem Gifford were

5

"unreasonable and unnecessary" (Dkt. #238 at p. 2). DPS replies that even if not required by local rules, DPS's use of local counsel was reasonable since DPS's primary counsel, B+B, with whom it has a "longstanding attorney-client relationship," needed assistance to navigate claims asserted against DPS "both under Federal and Texas law . . ." (Dkt. #239 at p. 2).

The parties dispute the reasonableness of hiring local counsel at all. While Plaintiffs are correct that the Court's Local Rules do not require local counsel, the Local Rules do contemplate parties hiring local counsel. *See* Local Rule CV-7(h) ("In any discovery-related motion, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between the lead attorney *and any local counsel* for the movant and the lead attorney *and any local counsel* for the non-movant.") (emphasis added). Even though the Local Rules do not require parties to retain local counsel, that does not mean that hours expended by local counsel are per se unreasonable. So the Court declines to find that hiring local counsel is entirely unreasonable, but it will evaluate the costs associated with local counsel in this case to determine reasonableness.

### A.     Local Counsel's Bills

DPS submitted invoices detailing local counsel's billing (Dkt. #232, Exhibit 1 at pp. 6–37). According to the invoices submitted by DPS, Bell Nunnally charged a total of $114,903.00[4] (*see* Dkt. #232, Exhibit 1 at pp. 12, 24, 32), and Johnston Clem Gifford charged a total of $12,288.00 (Dkt. #232, Exhibit 1 at p. 37). According to Mr. Barakat, Johnston Clem Gifford's fees were "lower than average," and Bell Nunnally's fees were "higher than average" (Dkt. #232, Exhibit 1 ¶ 15). Because Bell Nunnally's fees were high, Mr. Barakat offered a ten percent discount on Bell Nunnally's fees, reducing the total from $114,903.00 to $103,412.70 (Dkt. #232, Exhibit 1 at p. 48).

---

[4] To reach this number, the Court added the three "Total Fees" numbers from each of the three invoices (Dkt. #232, Exhibit 1 at pp. 12, 24, 32).

As Plaintiffs raise no objection to the hourly rates of either Bell Nunnally or Johnson Clem Gifford, the Court finds the rates prima facie reasonable. *Powell*, 891 F.2d at 1173.

*Bell Nunnally:* Plaintiffs note that Bell Nunnally "somehow billed 77.1 hours prior to [DPS's] first answer" and state that amount of time was "unreasonable[] and unnecessary because Local Counsel was not required for this Federal Case" (Dkt. #238 at p. 2). In reply, DPS does not support the specific number of hours expended by Bell Nunnally prior to answering, but it notes that "[i]t is reasonable for local counsel at the initiation of this action to bill a significant amount of time prior to trial as they assisted undersigned counsel in evaluating and addressing the claims asserted by Plaintiffs and navigating this Court and jurisdiction's procedures and rules" (Dkt. #239 at p. 3). DPS also justifies the hours expended by *all* attorneys by listing the following tasks performed:

> [P]reparing and filing an emergency motion to set aside the default against DPS, which had been procured without notice by the Plaintiff despite full knowledge that DPS was represented and defending, filing a motion to dismiss for failure to state a claim, defending against Plaintiff[s'] second motion for default against DPS, preparing a responsive pleading to the amended complaint, drafting a motion for summary judgment, engaging in settlement discussions with opposing counsel, preparing for trial, attending to the pretrial conference, jury selection and successfully trying the case before this Court.

(Dkt. #232 at p. 8). After careful review of the pleadings, record, and Bell Nunnally's invoices, the Court finds Bell Nunnally's hours expended reasonable. Prior to DPS's first answer on July 1, 2023, Bell Nunnally attorneys "(1) exchang[ed] at least two dozen emails with Counsel for Plaintiffs[] in which [DPS] and One Payment set forth their meritorious defenses, providing proof of the same; (2) engag[ed] in at least seven telephone conferences with Plaintiffs' counsel, discussing the same meritorious defenses; (3) participat[ed] in the Rule 26(f) conference; (4) contribut[ed] to the Rule 26(f) report; and (5) serv[ed] mandatory initial disclosures" (Dkt. #48

7

¶ 2; Dkt. #232, Exhibit 1 at pp. 7–24). And throughout Bell Nunnally's invoice, attorneys from Bell Nunnally removed charges for expended hours (*see, e.g.*, Dkt. #232, Exhibit 1 at p. 32 (billing 7.1 hours for 9.5 hours of recorded work)). The Court also recognizes DPS's offer to reduce Bell Nunnally's fee amount by ten percent, which also supports the Court's finding of reasonableness (Dkt. #232, Exhibit 1 at p. 48).

*Johnston Clem Gifford:* Plaintiffs object to Johnston Clem Gifford's fees because "according to Defendant's Counsel's motion, this case was 'simple' and only had 'one witness and 20 exhibits' so any other outside counsels that were not employed by [B+B] were unnecessary and were solely retained to increase attorney's fees" (Dkt. #238 at pp. 2–3). In response, DPS claims its comments were taken out of context, since its comments were in response to a motion for continuance (Dkt. #239 at p. 3). DPS hired local counsel to "enable[] undersigned counsel to narrow its voir dire, understand the jury pool, and make informed decisions on selection of the jury from the panel" (Dkt. #239 at p. 3). After careful review of the pleadings, record, and Johnston Clem Gifford's invoice, the Court finds Johnston Clem Gifford's hours expended reasonable. The invoice submitted indicates work done in preparation for trial (*see* Dkt. #232, Exhibit 1 at p. 37), and the Court does not find DPS retained Johnston Clem Gifford "solely to create a much larger bill for attorney's fees" (Dkt. #238 at p. 3). And the Court finds the hourly rate reasonable and will not reduce it (Dkt. #232, Exhibit 1 at p. 37).

Accordingly, the Court finds that the reasonable cost associated with Bell Nunnally is $103,412.70. And the Court finds that the reasonable cost associated with Johnston Clem Gifford is $12,288.00.

8

### B. B+B's Bills Associated with Communications with Local Counsel

In response to DPS's motion, Plaintiffs contest nineteen of B+B's entries as "unreasonable because Defendant's Counsel was not required to retain local counsel for this case, and any entry for this matter is solely to increase the attorney's fees for Defendant's Counsel" (Dkt. #238 at pp. 3–8). Plaintiffs' objections on this basis apply to 7.9 hours of Mr. Barakat's time, 3 hours of law clerk Danielle Latte's time, and 0.3 hours of paralegal Camila Guzman Lau's time (*see* Dkt. #238 at pp. 3–8 (Plaintiffs' objections); Dkt. #232, Exhibit 1 at pp. 38–45 (B+B invoice listing entries at issue)).

After review of the contested entries associated with communications with local counsel, the Court finds Mr. Barakat's entries[5] reasonable. "[C]onsultation and 'sound-boarding' among

---

[5] Mr. Barakat's entries, contested by Plaintiffs, are:

| Date | Entry | Hours | B+B's Invoice | Plaintiffs' Response |
|---|---|---|---|---|
| April 30, 2021 | "Summarize case and provide organizational charts for local counsel. Call with local counsel regarding same." | 0.5 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at pp. 3–4 |
| May 3, 2021 | "Interview with local counsel." | 1.0 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 4 |
| May 3, 2021 | "Update client on status of local counsel and receive update on First Data position." | 0.3 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 4 |
| May 5, 2021 | "Review and respond to correspondence from local counsel regarding retention." | 0.2 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 4 |
| May 14, 2021 | "Strategy and deadline call with local counsel." | 0.8 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 4 |
| May 18, 2021 | "Update from local counsel and meeting with client regarding rule 26F disclosures." | 0.3 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at pp. 4–5 |
| May 19, 2021 | "Follow up with local counsel on disclosures." | 0.2 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 5 |
| May 21, 2021 | "Call with local counsel regarding 26f disclosures." | 0.5 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 5 |
| May 25, 2021 | "Review and respond to inquiries regarding rule 26f conference from local counsel." | 0.2 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 5 |
| May 26, 2021 | "Call with local counsel. Review proposed declaration. Contact Manny Garcia regarding [REDACTED]." | 1.2 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at p. 5 |
| May 27, 2021 | "Review and respond to correspondence from local counsel regarding dropping parties." | 0.5 | Dkt. #232, Exhibit 1 at p. 38 | Dkt. #238 at pp. 5–6 |

attorneys is valuable to effective litigation." *Lewallen v. City of Beaumont*, No. 1:05-CV-733TH JURY, 2009 WL 2175637, at *10 (E.D. Tex. July 20, 2009), *aff'd in part*, 394 F. App'x 38 (5th Cir. 2010) (affirming the district court's award of costs and fees but reversing and rendering on other grounds). And "[t]here is significant value in keeping local counsel up to speed on the progress of a case, so that [local counsel] may adequately represent [the] client." *Id.*

The Court also finds Ms. Guzman Lau's entry[6] reasonable. The Court has already found the use of local counsel reasonable. *See supra* I.A. And "Texas courts permit a prevailing party to recover for time spen[t] in pursuit of attorney's fees." *United My Funds, LLC v. Perera*, No. 4:19-cv-00373, 2020 WL 10708754, at *3 (E.D. Tex. Dec. 18, 2020).

Lastly, the Court finds Ms. Latte's entries[7] reasonable. Again, the Court has already found the use of local counsel reasonable. *See supra* I.A. The Court does not find that Ms. Latte's entries

---

| June 7, 2021 | "Review default. Call with local counsel regarding same. Review notice of appearance and emails regarding default. Review motion to set aside same." | 1.1 | Dkt. #232, Exhibit 1 at p. 39 | Dkt. #238 at p. 6 |
|---|---|---|---|---|
| February 28, 2023 | "Call with local counsel regarding trial." | 0.6 | Dkt. #232, Exhibit 1 at p. 43 | Dkt. #238 at pp. 6–7 |
| March 1, 2023 | "Meeting with local counsel re case status." | 0.5 | Dkt. #232, Exhibit 1 at p. 44 | Dkt. #238 at p. 7 |

[6] Ms. Guzman Lau's entry, contested by Plaintiffs, is:

| Date | Entry | Hours | B+B's Invoice | Plaintiffs' Response |
|---|---|---|---|---|
| March 8, 2023 | "Gathered Bell Nunnally's invoices and sent them to B. Barakat to prepare the Motion for Attorneys Fees." | 0.3 | Dkt. #232, Exhibit 1 at p. 45 | Dkt. #238 at p. 8 |

[7] Ms. Latte's entries, contested by Plaintiffs, are:

| Date | Entry | Hours | B+B's Invoice | Plaintiffs' Response |
|---|---|---|---|---|
| February 28, 2023 | "Attended call with B. Barakat and local counsel to discuss the case. Met with B. Barakat to discuss assignments and priorities in trial preparation including: scheduling call with local counsel, contacting the JA to inquiry on status of case before us in trial, review of jury instructions, [REDACTED] | 0.8 | Dkt. #232, Exhibit 1 at p. 43 | Dkt. #238 at p. 6 |

10

demonstrate a desire "solely to increase the attorney's fees for Defendant's Counsel" (*e.g.*, Dkt. #238 at p. 6).

The Court will not reduce or eliminate B+B's fees associated with communications between it and local counsel.

## II.  Fees Incurred for the EFTA Claim

Plaintiffs also object to "any fees accumulated by Defendant's Counsel for any preparation of the E[FT]A claim after 12 July 2022" (Dkt. #238 at p. 3). Plaintiffs claim any fees incurred by DPS's counsel defending the EFTA claim were unnecessary because "the E[FT]A claim was clearly dismissed by the Court in its [July 12, 2022] order" (Dkt. #238 at p. 3). DPS responds that the Court's July 12, 2022 order dismissed all claims against defendant Fiserv, Inc., but "[n]owhere in the order d[id] this Court dismiss the EFTA claim against DPS" (Dkt. #239 at p. 4).

The Court will not reduce DPS's requested fees for preparing to litigate the EFTA claim. First, the Court notes that in their response to DPS's motion, Plaintiffs do not object to specific entries; they merely object broadly to "any fees accumulated" (Dkt. #238 at p. 3). A party responding to a motion for attorneys' fees should "present specific objections to the allowance sought and advance the reasons for a denial or reduction." *McClure v. Mexia Indep. Sch. Dist.*, 750

|  | drafting of pre-trial order and opening power point." |  |  |  |
|---|---|---|---|---|
| February 28, 2023 | "Communicated with A. Collado to created Zoom meeting for call between B. Barakat and local counsel in Texas. Created calendar entry for call on March 1 at 1:30 p m." | 0.2 | Dkt. #232, Exhibit 1 at p. 43 | Dkt. #238 at p. 6 |
| March 1, 2023 | "Met with B. Barakat and G. Green local counsel in Texas to discuss case including judge procedure for voir dire." | 0.5 | Dkt. #232, Exhibit 1 at p. 44 | Dkt. #238 at p. 7 |
| March 2, 2023 | "Finalized drafting Pre-Trial order, researched docket for exhibit lists and submitted order to local counsel." | 1.5 | Dkt. #232, Exhibit 1 at p. 44 | Dkt. #238 at p. 7 |

11

F.2d 396, 405 (5th Cir. 1985). "It is not the duty of the Court to go through the record line-by-line to determine which fees [the responding party] objects to." *Melanie B. v. Georgetown Indep. Sch. Dist.*, No. 1:17-CV-438-LY, 2018 WL 2027745, at *13 (W.D. Tex. May 1, 2018). Since Plaintiffs did not object to specific entries, the Court will not take any specific entries under review.

Second, to the extent DPS's counsel incurred fees preparing to defend against an EFTA claim, the Court finds that preparation reasonable. The Court has already found that Plaintiffs' "allegations brought in the complaint made it appear as though Plaintiffs were also alleging that [DPS] had violated EFTA. During the pretrial conference, however, the Court discovered this was not true" (Dkt. #215 at p. 4). That is, both the Court and DPS were, up until the pretrial conference, under the impression that Plaintiffs *were* bringing an EFTA violation claim against DPS. Further, the Court's July 12, 2022 order only dismissed claims against Fiserv, Inc. (Dkt. #186 at p. 5). So the Court's dismissal of the EFTA claim against defendant Fiserv, Inc. did not put DPS "on notice that [the EFTA] claim was dismissed" as Plaintiffs claim, since the dismissal only addressed Fiserv, Inc. and not DPS (Dkt. #238 at p. 3).

Accordingly, the Court will not reduce DPS's requested fees for any preparation to defend the EFTA claim.

### III.    Fees Incurred for Travel Time

Plaintiffs object to DPS's bills for travel time for either being contradictory or unnecessary. The Court will address both in turn.

First, Plaintiffs object to Mr. Barakat's March 2, 2023 entry of "Travel time to Texas" and March 3, 2023 entry of "Travel time to Miami" (Dkt. #232, Exhibit 1 at p. 46) (collectively, the

12

"Disputed Travel Entries") because they supposedly present a discrepancy in travel time (Dkt. #238 at p. 8). The supposedly contradictory entries are:

| Date | Entry | Hours |
|---|---|---|
| March 3, 2023 | "Travel time to and from court house in Texas. Prepare for and attend pretrial conference. Meeting with trial team after hearing to discuss v[oi]r dire and opening topics. Provide instructions to graphic designer for power point. Settlement calls with client and oc. Document calls." | 4.5 |
| March 2, 2023 | "Travel time to Texas" | 4 |
| March 3, 2023 | "Travel time to Miami" | 4 |

(Dkt. #238, Exhibit 1 at pp. 44, 46). Plaintiffs call the Disputed Travel Entries entry into question because

> on 3 March 2023, Mr. Barakat put that travel time TO AND FROM TEXAS was 4.5 hours . . . this entry shows 4 hours one way. . . . It is unknown why Defendant's Counsel made a double entry of this trip, and it is also unknown why there is a discrepancy in the time logs for different flights.

(Dkt. #238 at pp. 8–9). DPS does not present any explanation for the discrepancy.

After review, the Court finds the entries reasonable and not contradictory. The discrepancy appears to arise from travel time *within* Texas (the March 3, 2023 entry) and travel time *between* Texas and Florida (the Disputed Travel Entries). This logically follows since (1) the Disputed Travel Entries list the same travel time for travel between the states and (2) the other March 3, 2023 entry specifically indicates the travel was "to and from *court house* in Texas" (Dkt. #232, Exhibit 1 at p. 44) (emphasis added).

Second, Plaintiffs object to any travel time billed by DPS as unnecessary because "[i]f Local Counsel was required, as Defendant's Counsel contends, and if this case was very 'simple' then [Mr. Barakat's and Mr. Dally's] attendance was not necessary and was done solely to increase

13

attorney's fees" (Dkt. #238 at 8–10). The Court finds Mr. Barakat's and Mr. Dally's decision to travel to Texas reasonable. Lead counsel's decision to hire local counsel does not mean the Court expects lead counsel to totally divest from the pre-trial conference and the trial. And Mr. Barakat and Mr. Dally both took on roles at trial. Mr. Barakat conducted voir dire (Dkt. #230 at pp. 29–80); presented opening statements (Dkt. #230 at pp. 106–115); and cross-examined Mr. Natour (Dkt. #230 at pp. 150–228, 245–252). Mr. Dally presented DPS's motion for directed verdict (Dkt. #230 at pp. 255–263).

But the Court notes that counsel from B+B billed 24 hours of travel time (Dkt. #232, Exhibit 1 at p. 46 (16 hours for Mr. Barakat and 8 hours for Mr. Dally)) without "provid[ing] any evidence that work was done during this travel" or "demonstrat[ing] that comparably skilled practitioners charge their full hourly rate for travel time." *Geoffrion v. Nationstar Mortgage LLC*, No. 4:14-cv-350, 2016 WL 2758127, at *4 (E.D. Tex. May 12, 2016) (citing *Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015)), *vacated pursuant to settlement*, 2016 WL 6678492 (E.D. Tex. Oct. 26, 2016). Because DPS presents no evidence that it is the "common practice in the area to charge full rates for travel time," *id.*, the Court reduces the bills for travel entries to 50% of the full hourly rate of the billing attorneys:

| Date | Entry (Billing Attorney) | Hours | B+B's Invoiced Amount (Dkt. #232, Exhibit 1 at p. 46) | Court's Reduced Amount |
|---|---|---|---|---|
| March 2, 2023 | Travel time to Texas (Mr. Barakat) | 4 | $2,200.00 | $1,300.00[8] |
| March 3, 2023 | Travel time to Miami (Mr. Barakat) | 4 | $2,200.00 | $1,300.00 |

---

[8] The Court notes that Mr. Barakat's "regular hourly rate . . . in 2023 [] is $650.00" but he reduced his regular rate from $650.00 to $550.00 "because DPS is a long-standing client of the firm to whom [he] offer[s] a reduced rate" (Dkt. #232, Exhibit 1 at p. 2). The Court reduces Mr. Barakat's full hourly rate, not the discounted rate, by 50% in order to calculate the appropriate fees for travel time.

| | | | | |
|---|---|---|---|---|
| March 6, 2023 | Travel time to Texas (Mr. Barakat) | 4 | $2,200.00 | $1,300.00 |
| March 8, 2023 | Travel time to Miami (Mr. Barakat) | 4 | $2,200.00 | $1,300.00 |
| March 6, 2023 | Travel time to Texas (Mr. Dally) | 4 | $1,000.00 | $500.00 |
| March 8, 2023 | Travel time to Miami (Mr. Dally) | 4 | $1,000.00 | $500.00 |

**IV.   Summary of Fees Awarded**

In accordance with this Order, the Court finds the following attorneys' fees amounts reasonable:

| Law Firm Incurring Fees | Fees Requested by DPS | Fees Awarded |
|---|---|---|
| Bell Nunnally | $103,412.70 | $103,412.70 |
| Johnston Clem Gifford PLLC | $12,288.00 | $12,288.00 |
| Barakat + Bossa | $79,560.70 | $74,960.70 |
| *Total:* | | $190,661.40 |

## CONCLUSION

It is therefore **ORDERED** that Defendant Data Payment Systems, Inc.'s Motion for Attorneys' Fees (Dkt. #232) is hereby **GRANTED in part.**

It is further **ORDERED** that Data Payment Systems, Inc. be awarded attorneys' fees in the amount of $190,661.40.

**IT IS SO ORDERED.**

**SIGNED this 2nd day of January, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE