# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| NICK NATOUR, and ENCLARE, LLC,  §<br>§<br>*Plaintiffs,* §<br>v. §<br>§<br>BANK OF AMERICA, NA, et al., §<br>§<br>*Defendants.* §<br>§ | Civil Action No. 4:21–CV–331<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Nick Natour's Declaration Under Penalty of Perjury (Dkt. #259), which the Court construes as a Motion to Disqualify Judge. Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

On March 9, 2023, the Court entered Final Judgment in this case, ordering that all of Plaintiffs' claims against Defendant Data Payment Systems, Inc. ("DPS") were dismissed with prejudice and that DPS "shall have and recover of and from Plaintiffs reasonable and necessary attorney's fees as prevailing parties pursuant to the [TTLA] . . . in an amount to be presented by motion, to be filed no later than 14 days after the date this Judgment is signed, and to be determined by this Court" (Dkt. #228 at pp. 1–2).

On January 2, 2024, the Court entered an order awarding attorneys' fees in the amount of $190,661.40 (Dkt. #242).

On May 3, 2024, DPS filed its Application for Post-Judgment Writ of Execution (E.D. Tex. 4:24-MC-077-ALM, Dkt. #1). In the application, DPS notes that as of that date, "[n]o supersedeas

bond ha[d] been filed and approved to suspend execution of the Judgment" (E.D. Tex. 4:24-MC-077, Dkt. #1 ¶ 6). DPS requested that the Court direct the Clerk of Court to issue the writ of execution (E.D. Tex. 4:24-MC-077, Dkt. #1 ¶ 15). On May 22, 2024, the Court ordered that the Clerk of Court issue the Writ of Execution as to Judgment Debtors (E.D. Tex. 4:24-MC-077, Dkt. #2).

On June 10, 2024, Plaintiffs filed four motions between 11:17 AM and 4:45 PM (Dkt. #243; Dkt. #244; Dkt. #245; Dkt. #246).[1] In these motions, Plaintiffs sought (1) for the Court to order a cessation of "all collection activities"; (2) for the Court to voluntarily vacate all orders and writs in this case and a related case; and (3) for the undersigned to recuse himself from the case (Dkt. #243 at p. 2; Dkt. #244 at p. 4; Dkt. #245 at p. 5). The Court immediately began researching the relevant issues, which took several hours. At 6:25 PM the same day, the Court issued an order, temporarily staying the writ of execution and ordering expedited briefing (Dkt. #248). Further, the undersigned denied Plaintiffs' request for the undersigned to recuse himself (Dkt. #247). Two days later on June 12, 2024, after receiving expedited briefing, the Court issued an order denying Plaintiffs' remaining motions from June 10, 2024 to stay the writ of execution as moot because the writ of execution had already been fully executed (Dkt. #253).

On June 20, 2024, the Court issued an Order to Show Cause (Dkt. #256). In the Order to Show Cause, the Court ordered Plaintiffs' attorney, Nicholas D. Mosser ("Mosser"), "to appear and show cause why he should not be sanctioned and/or appropriately disciplined for conduct unbecoming a member of the bar and for statements asserted" in several different motions and

---

[1] However, the final two motions (Dkt. #245; Dkt. #246) were corrected versions of the first motions (Dkt. #243; Dkt. #244) due to deficiencies in the first two motions.

2

"inappropriate communications with court staff," particularly a call that Mosser made to the Court's chambers on June 17, 2024 (Dkt. #256).

On July 3, 2024, Plaintiff Nick Natour ("Natour") filed the Declaration Under Penalty of Perjury (Dkt. #259). In the Declaration Under Penalty of Perjury, Natour alleges that the undersigned "should be disqualified from the . . . action" based on his "clear bias and personal prejudice against [Natour] and [Mosser]" (Dkt. #259 ¶¶ 2, 6). James C. Mosser, Natour's other counsel of record, certified that the Declaration Under Penalty of Perjury "complies with 28 U.S.C. 144 and . . . that th[e] declaration has been made in good faith" (Dkt. #259 at p. 3). As previously mentioned, the Court construes the Declaration Under Penalty of Perjury as a motion to disqualify the undersigned.

## LEGAL STANDARD

Disqualification and recusal of a federal judge are governed by 28 U.S.C. § 144 and § 455. Although Natour only referred to 28 U.S.C. § 144 in the Declaration Under Penalty of Perjury, the Court considers his motion under both 28 U.S.C. § 144 and § 455 in an abundance of caution (*See* Dkt. #259 ¶ 7).

Section 144 of 28 U.S.C provides that:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Some of the grounds for disqualification of a judge are set forth in 28 U.S.C. § 455. This statute says, in pertinent part, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might *reasonably* be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
>> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>> (ii) Is acting as a lawyer in the proceeding;
>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455 (emphasis added). "A legally sufficient affidavit [of personal bias and prejudice on the part of a judge] must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature." *Henderson v. Dep't of Pub. Safety & Corrs.*, 901 F.2d 1288, 1296 (5th Cir. 1990).

"Sections 144 and 455(b)(1) are governed by the same principles." *Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463 (5th Cir. 2020) (citing *Liteky*, 510 U.S. at 548–51). "And because these provisions use the word 'party,' '[b]ias for or against an attorney, who is not a party, is not enough to require disqualification unless it can also be shown that such a controversy would demonstrate a bias for or against the party itself.'" *Id.* (quoting *Henderson*, 901 F.2d at 1296). "In order for bias against an attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney or in favor of another attorney because of his conduct." *Id.* (quoting *Henderson*, 901 F.2d at 1296).

"Additionally, the Supreme Court has directed [the Court] to consider whether the judge's views are 'extrajudicial.'" *Id.* (citing *Liteky*, 510 U.S. at 551). "An opinion is not extrajudicial if it was 'formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings.'" *Id.* (quoting *Liteky*, 510 U.S. at 555). "Non-extrajudicial facts 'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* (quoting *Liteky*, 510 U.S. at 555). "Even the presence of extrajudicial facts, without something more, does not suffice to show bias." *Id.* (quoting *Liteky*, 510 U.S. at 554).

## ANALYSIS

The Court considers three issues. First, the Court considers Natour's claim that the undersigned possesses a clear animosity towards Mosser for objecting to the Court. Second, the Court considers Natour's claim that DPS's application for a writ of execution and the Court's issuance of the writ of execution without notice to Plaintiffs justify disqualification. Third, the

Court considers Natour's claim that the Court failed to rule on motions that required emergency action.

I.   **Disqualification Based Upon the Court's Judicial Decisions**

The Court notes that mere disagreements as to rulings made are almost always insufficient to show bias or prejudice justifying removal. *See Liteky*, 510 U.S. at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). Furthermore, affidavits that are based on mere conclusions, opinions, or rumors rather than personal knowledge are legally insufficient to require disqualification. *Henderson*, 901 F.2d at 1296.

Although Natour claims that the undersigned possesses a "clear animosity towards [Mosser]" based on Mosser's objections to the Court, he has not alleged any facts or circumstances that are legally sufficient to require or warrant disqualification (*See generally* Dkt. #259). Natour has provided only general allegations to support this claim (*See generally* Dkt. #259). Further, Natour presents nothing but his conclusory allegation that the undersigned is biased. In sum, sufficient information has not been presented that would lead a reasonable person to conclude that the undersigned is biased against Mosser (or Natour), nor is there any evidence pointing to a personal, non-judicial bias. *Henderson*, 901 F.2d at 1296. Natour has not demonstrated a valid basis for removal of the undersigned. *See* 28 U.S.C. §§ 144, 455. Therefore, the Court rejects this argument.

II.   **Whether DPS's Application for a Writ of Execution and the Court's Issuance of the Writ of Execution Without Notice to Plaintiffs Justify Disqualification**

DPS's application for a writ of execution and the Court's issuance of the writ of execution without notice to Plaintiffs do not justify disqualification.

Natour claims that "Brian Barakat through an ex parte application circumvented [his] due process rights, [his] nephew's due process rights, and [his] son's due process rights and became a state actor by depriving Plaintiffs and their relatives of their due process rights" (Dkt. #259 ¶ 3). Further, Natour claims that "[r]ather than filing in this cause number, Data Payment and Brian Barakat have convinced this Court to issue a writ via ex parte proceedings" (Dkt. #259 ¶ 3). Thus, Natour asserts that "[the undersigned's] ex parte proceedings . . . demonstrates that there is a clear bias and personal prejudice against [Natour] and [Mosser]; this animosity and prejudice is based on the ex parte proceedings and is prejudicing [Natour's] rights under the law" (Dkt. #259 ¶ 6).

DPS's application for a writ of execution and the Court's issuance of the writ of execution without notice to Plaintiffs do not demonstrate any personal bias of the undersigned against Natour or Mosser. "[T]he established rules of our system of jurisprudence do not require that a [party] who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment." *Endicott-Johnson Corp. v. Encyclopedia Press*, 266 U.S. 285, 288 (1924). "Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,' no f[ur]ther notice being 'necessary to advance justice.'" *Id.* (internal citations omitted).

Plaintiffs did not need notice that the application for the writ of execution had been filed or that that the writ of execution had issued in order for the writ of execution to be proper. *See Endicott-Johnson Corp.*, 266 U.S. at 288; *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan*

7

*Minyak Dan Gas Bumi Negara*, No. CIV.A. H01-0634, 2002 WL 32107930, at *2 (S.D. Tex. Feb. 20, 2002) (citing *Endicott*, 266 U.S. at 288); *see also In re Guardianship of Bays*, 355 S.W.3d 715, 720 (Tex. App.—Fort Worth 2011, no pet.) (citing *Endicott*, 266 U.S. at 288). The Court cannot find any statute, nor does Natour provide one, that requires the Court to notify Plaintiffs of a writ of execution apart from the entry of the judgment.

That Plaintiffs did not receive notice that the application for a writ of execution had been filed or that the writ of execution had issued—notice which is not necessary for the writ of execution to be proper—does not demonstrate any personal bias of the undersigned against Natour or Mosser. Therefore, the Court rejects Natour's claim that DPS's application for a writ of execution and the Court's issuance of the writ of execution without notice to Plaintiffs justify disqualification.

## III.    Whether Any Delay in Ruling on Motions Justifies Disqualification

No delay in ruling on any motions in this case justifies the disqualification of the undersigned.

Natour claims that "[the undersigned's] failure to rule on motions requiring emergency action . . . demonstrates that there is a clear bias and personal prejudice against [Natour] and [Mosser]; this animosity and prejudice is based on the ex parte proceedings and is prejudicing [Natour's] rights under the law" (Dkt. #259 ¶ 6).

Limited case law exists in the Fifth Circuit regarding a motion to disqualify a judge where the judge did not promptly rule on a motion. However, in *Garcia v. City of Laredo*, the Fifth Circuit considered whether a district court judge's "failure to promptly rule" on a motion for preliminary injunctive relief casted doubt on the judge's impartiality. 702 F.3d 788, 794 (5th Cir. 2012). The

delay in ruling on the motion for preliminary injunctive relief was due to "scheduling issues." *Id.* Therefore, the Fifth Circuit found that "such failure . . . from a reasonable observer's perspective would not cast doubt on the judge's impartiality." *Id.*

Akin to *Garcia*, no delay in the Court's ruling on motions requiring emergency action demonstrates any personal bias of undersigned against Natour or Mosser. As previously discussed, on June 10, 2024, Plaintiffs filed four motions between 11:17 AM and 4:45 PM (Dkt. #243; Dkt. #244; Dkt. #245; Dkt. #246).[2] The Court immediately began researching the relevant issues, which took several hours. Subsequently, the Court made a ruling on Plaintiff's "motions requiring emergency action" within approximately only seven hours, temporarily staying the writ of execution and ordering expedited briefing (*See* Dkt. #247; Dkt. #248). Further, the Court ruled on all remaining issues in Plaintiffs' four June 10, 2024 motions only two days later, on June 12, 2024 (Dkt. #253). In this ruling, the Court denied Plaintiffs' requested stay of the writ of execution from June 10, 2024, as moot because the writ of execution had already been fully executed (Dkt. #253). Therefore, the Court did not "fail[] to rule on motions requiring emergency action" (*See* Dkt. #253).

Natour's assertion that the undersigned has failed to rule on motions requiring emergency action is incorrect. Therefore, the Court rejects the argument that the undersigned's failure to rule on motions requiring emergency action demonstrates a personal bias against Natour and Mosser.

---

[2] As previously discussed, the final two motions (Dkt. #245; Dkt. #246) were corrected versions of the first motions (Dkt. #243; Dkt. #244) due to deficiencies in the first two motions.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Nick Natour's Declaration Under Penalty of Perjury (Dkt. #259), which the Court construes as a Motion to Disqualify Judge, is hereby **DENIED**.[3]

**IT IS SO ORDERED**

SIGNED this 18th day of July, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] On July 17, 2024, James C. Mosser filed an unusual Notice, claiming that pursuant to "28 U.S.C.A. [sic] § 144 and Local Rule AT-2(2)(A) the hearing previously set for Friday [sic] July 19, 2024, at 0900 shall not take place and [the undersigned] 'shall proceed no further' herein" (Dkt. #262 at p. 1) (citing 28 U.S.C. § 144). The hearing on Friday, July 19, 2024, at 9:00 AM shall proceed as scheduled.